UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO GARCIA,<br><br>          Plaintiff,<br><br>     v.<br><br>KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services,<br><br>          Defendant. | CV 10-8820 PA (RZx)<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

Plaintiff Marco Garcia ("Plaintiff") commenced this action on May 13, 2011 pursuant to the Administrative Procedures Act ("APA"), 42 U.S.C. § 1395ff(b)(1)(A) (incorporating the judicial review procedure of 42 U.S.C. § 405(g)),[1] to challenge the decision of defendant Kathleen Sebelius, Secretary of the United States Department of Health and Human Services (the "Secretary") to recoup what the Secretary determined were overpayments billed under Plaintiff's Medicare provider number.

---

[1] See also 5 U.S.C. §§ 701-706.

The Parties filed Trial Briefs and exchanged proposed Findings of Fact and Conclusions of Law.[2] On November 8, 2011, following the filing of the Administrative Record ("AR") and briefing by the parties, the Court, sitting without a jury, conducted a bench trial. Having considered the materials submitted by the parties and reviewing the evidence, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a):

I. **Findings of Fact**

    A. **Statutory and Regulatory Background**

        1. The Medicare Act, established under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg, pays for covered medical care provided to eligible aged and disabled persons. During the time at issue herein, the statute consisted of three main parts: Part A, which generally authorizes payment for covered inpatient hospital care and related services, 42 U.S.C. §§ 1395c to 1395i-5, 42 C.F.R. Part 409; Part B, which provides supplementary medical insurance for covered medical services, such as physicians' services, 42 U.S.C. §§ 1395j to 1395w-4, 42 C.F.R. Part 410; and Part C, which authorizes beneficiaries to obtain services through HMOs and other "managed care" arrangements, 42 U.S.C. §§ 1395w-21 to 1395w-28, 42 C.F.R. Part 422. This case involves Medicare Part B.

        2. In administering Part B, CMS acts through private fiscal agents called "carriers.[3]" 42 U.S.C. § 1395u; 42 C.F.R. Part 421, Subparts A and C, and 42 C.F.R. §§ 421.3 and 421.5(b). Carriers are private entities who, under contract with the Secretary perform a variety of functions, such as making coverage determinations in accordance with the Medicare Act, applicable regulations, the Medicare Part B Supplier Manual or other

---

[2] The Court ordered the parties to review the other side's proposed Findings of Fact and Conclusions of Law and to mark them to indicate the particular factual assertions and legal conclusions they disputed. Whittier disputed few of the Secretary's proposed Findings of Fact, and those it did dispute, and which the Court relies upon in reaching its conclusion, are supported by the record. See Docket No. 39.

[3] Since the June 2007 overpayment determination at issue, CMS has replaced Part B carriers with Medicare Administrative Contractors. Because the Administrative Record refers to "carriers," these findings will refer to carriers.

1  agency guidance, determining reimbursement rates and allowable payments, conducting
2  audits of the claims submitted for payment, and rejecting or adjusting payment requests. In
3  addition, upon receipt of a claim for services rendered, the carrier pays the Medicare
4  beneficiary on the basis of an itemized bill, and pays the Medicare supplier on the basis of
5  an assignment of benefits executed by the beneficiary. 42 U.S.C. § 1395u(b)(3)(B). These
6  carrier functions are prescribed by regulation. 42 C.F.R. § 421.200.

7        3. Part B resembles "a private medical insurance program that is subsidized in
8  major part by the federal government." Schweiker v. McClure, 456 U.S. 188, 190 (1982).
9  As with private medical insurance programs, the statute and its implementing regulations set
10 forth conditions and limitations on the coverage of services and items (42 U.S.C. §§ 1395k,
11 1395l, 1395x(s)), exclude certain services and items from coverage, and otherwise specify
12 various limitations. See also 42 U.S.C. § 1395y(a)(2)-(16); 42 C.F.R. § 411.15(a)-(j). For
13 all services and items, Medicare coverage is limited to services that are medically
14 "reasonable and necessary" for the diagnosis or treatment of illness or injury or to improve
15 the functioning of a malformed body member. 42 U.S.C. § 1395y(a)(1)(A); 42 C.F.R. §
16 411.15(k)(1). Although "reasonable and necessary" is not defined in the Act, Congress has
17 vested final authority in the Secretary to determine what items or services are "reasonable
18 and necessary." See 42 U.S.C. § 1395ff(a); Heckler v. Ringer, 466 U.S. 602, 617 (1984).
19 Consistent with this authority, the Secretary has promulgated regulations relating to the
20 "reasonable and necessary" requirement.

21       4. In exercising their regulatory functions, carriers conduct post-payment audits
22 to ensure that payments are made in accordance with applicable Medicare payment criteria.
23 When audited, a Medicare provider seeking payment must provide sufficient evidence to
24 establish the medical reasonableness and necessity of the services billed to Medicare. 42
25 U.S.C.§§ 1395g(a), 1395l(e), 1395gg; see also 42 C.F.R. § 411.15(k)(1).

26       5. Overpayments are Medicare payments a provider or beneficiary has received
27 in excess of amounts due and payable under the statute and regulations. See 42 U.S.C. §
28 1320a-7k(d)(4)(B). Once a contractor determines an overpayment has been made, the

1  amount so determined is a debt owed to the government and the contractor must attempt
2  recover from the provider, unless the overpayment can be waived. The Act provides for a
3  waiver of repayment liability for a provider when it has been determined that it "did not
4  know, and could not reasonably have been expected to know, that payment would not be
5  made for such services." 42 U.S.C. § 1395pp(a). The Act also provides for waiver of
6  recovery when it is determined that the provider is "without fault" in incurring the denial of
7  payment. 42 U.S.C. § 1395gg(b)(1).

8        6.      Upon a determination of an overpayment, the Medicare contractor issues a
9  notice of "initial determination" indicating the amount deemed owing. 42 U.S.C.
10 § 1395ff(a)(1); 42 C.F.R. § 405.920. If the claimant is dissatisfied with the initial
11 determination, a "redetermination" may be requested by the same contractor. 42 U.S.C.
12 § 1395ff(a)(3); 42 C.F.R. § 405.940. Next, if the claimant is dissatisfied with the
13 contractor's redetermination, a "reconsideration" may be requested by a "qualified
14 independent contractor" ("QIC"). 42 U.S.C. § 1395ff(b)(1)(A) & (c); 42 C.F.R. § 405.960.

15       7.      A still dissatisfied claimant may request a hearing, "as provided in [42 U.S.C.
16 §] 405(b)," before an administrative law judge ("ALJ"). 42 U.S.C. § 1395ff(b)(1)(A), (E) &
17 (d)(1); 42 C.F.R. § 405.1002. The participation of CMS and/or its contractors in an ALJ
18 hearing is allowed if they elect to do so, but not required. 42 C.F.R. §§ 405.1010(a),
19 405.1012(a). The ALJ's decision, in turn, may be reviewed by the Medicare Appeals
20 Council of the Departmental Appeals Board. 42 U.S.C. § 1395ff(d)(2); 42 C.F.R.
21 § 405.1100. Once this administrative process is exhausted, the claimant may then seek
22 judicial review, "as provided in [42 U.S.C. § ] 405(g)," of the final agency decision of the
23 ALJ or the Appeals Council, as applicable. 42 U.S.C. § 1395ff(b)(1)(A), (E); 42 C.F.R.
24 § 405.1136.

25       8.      A dissatisfied Medicare provider must present its claim through the designated
26 administrative appeals process and exhaust available administrative remedies. 42 U.S.C. §
27 1395u(b)(3)(C); 42 U.S.C. § 1395ff(b) (incorporating by reference 42 U.S.C. § 405(b)); see
28 also, 42 C.F.R. § 405.801 et seq. (describing the administrative appeals process for Part B).

B.      **Plaintiff's Overpayment**

9.      Plaintiff is a licensed medical doctor with a Medicare provider number. (AR1409-10.)  In December 2004, Plaintiff began working with Sleepless in L.A. Diagnostic Inc. ("Sleepless"), a sleep diagnostic center located at 1127 Wilshire Boulevard, Suite 305, Los Angeles, California. Complaint ¶ 16.  Plaintiff was affiliated with Sleepless from December 2004 through March 2006.  AR 1411.  From December, 2004, through November, 2005, Sleepless billed Medicare for various services under Plaintiff's individual provider identification number.  See AR 1304.

10.     All claims were processed under Plaintiff's individual provider identification number and all Medicare checks were made payable to Plaintiff.  (AR 1305.)  Plaintiff testified that his duties included providing services to beneficiaries, including reviewing test results and making recommendations.  Plaintiff stated that his duties were to "[b]asically review the patients' symptoms, reasons for the tests, what tests were ordered, review how the tests were done and whether . . . I agree with the results and then the recommendations." AR 1414: 24-1415: 2.

11.     National Heritage Insurance Company ("NHIC"), the Part B carrier, initially processed and paid the claims.  Later, the California Benefit Integrity Support Center ("CAL-BISC") conducted a post-payment audit of the claims.  See AR 15.  As part of the audit, CAL-BISC randomly selected claims for 40 beneficiaries during the time period of December 1, 2004 through November 30, 2005.  Id.  CAL-BISC determined that the records furnished were insufficient to support the reasonableness and medical necessity of the services billed.  Id.  On September 11, 2006, CAL-BISC conducted an on-site provider location verification visit, and found that Plaintiff was not at the location listed as the physical address.  AR 56.  As a result of the post-payment audit, and an on-site visit that determined Plaintiff was not operating as required, NHIC pursued all Medicare payments paid to Plaintiff from the time period of December 1, 2004, though November 30, 2005, as overpayments.  AR 56.  Therefore, overpayments were assessed on all paid claims billed

with Plaintiff's provider identification number and name during the time period of December 1, 2004, through November 30, 2005. AR 1305.

12. On July 12, 2007, Plaintiff requested a redetermination. AR 1286. In this request, Plaintiff argued that the demand for repayment was wrongly addressed to him and should have been issued to Roxanne Khadem and Sherri Noori of Sleepless because he had nothing to do with billing Medicare. Id. Nothing in the Plaintiff's letter objected to the amount or appropriateness of the overpayment amount. Id. Plaintiff did not submit any medical records or additional information with his request. Id.; see also A.R. 1304.

13. On September 12, 2007, NHIC issued an unfavorable redetermination decision stating CAL-BISC was correct in assessing an overpayment on the claims for service dates between December 1, 2004, and November 30, 2005. AR 1304. The decision reiterated that a claim for Medicare benefits is only valid if there is adequate documentation in the medical records to verify the services billed. AR 1305. As part of its audit, Cal-BISC received medical records for thirty-eight beneficiaries. AR 1306; 1313 (list of beneficiaries).[4/] The records were found to be insufficient to support the services billed. Id.

14. The NHIC decision assessed as overpayments all paid claims billed under Plaintiff's provider number and name from December 1, 2004, through November 30, 2005. AR 1305. Further, NHIC found that Plaintiff was responsible for repaying the overpayment amount. AR 1307. The overpayment amount was determined to be $867,689.32, plus any applicable interest. AR 1304.

15. Plaintiff, through his attorney, timely appealed this determination to the Qualified Independent Contractor ("QIC"), First Coast Service Options ("FCSO"). AR 1264-87. Plaintiff renewed his arguments that he was never a Medicare provider for the services at issue, that he was an independent contractor for Sleepless, and that he did not

---

[4/]   Although CAL-BISC initially audited claims for 40 beneficiaries, no medical information was provided for the two remaining beneficiaries. Accordingly only the records for thirty-eight beneficiaries were at issue during the redetermination and subsequent administrative appeals.

have access to medical records. AR 1266-71. On July 11, 2008, the QIC reviewed the claims and issued an unfavorable decision to the Plaintiff. AR 1246-57. The QIC concluded that the medical necessity of the services could not be determined due, in part, to lack of complete documentation:

> Review of the medical records provided does not provide evidence to demonstrate that the patients had significant signs and symptoms and that diagnostic testing was ordered after a full history with preliminary examinations or tests. Further, the information in the medical records does not provided [sic] evidence that the test results were utilized to adjust/establish treatment parameters.
>
> There was no indication of symptoms or physical findings that would justify the performance of the services in accordance with Medicare guidelines.

AR 1249.

16. The QIC also noted that the administrative appeals process did not have the authority to address allegations of fraud raised by the Plaintiff. Id. The QIC ultimately found that the services rendered did not meet the requirements to be considered reasonable and necessary in the treatment of the patients. Id. Accordingly, the QIC found that an overpayment was made that Plaintiff was responsible to return. Id.

17. Plaintiff requested a hearing before an Administrative Law Judge to challenge the unfavorable determination of the QIC on September 15, 2008. AR 1227-32. In his request, Plaintiff renewed his previous arguments, and again submitted no additional medical documentation. Id. In his request for a hearing, Plaintiff contended that he did not have custody or control of any documents that would support the bases for his appeal. AR 1230. Plaintiff alleged that he would make a request through the Freedom of Information Act to obtain all relevant and material documents and anticipated submitting the evidence to the ALJ by November 15, 2008. AR 1230-31.

18. A hearing was held on August 6, 2009. See Hearing Transcript, AR 1400-46. Present at the hearing was Plaintiff, his attorney, the ALJ's legal assistant and the ALJ. AR 1405. At the hearing, Plaintiff testified that he began to serve as an "independent contractor" with a clinic known as "Sleepless in L.A." in approximately December 2004 and

1  continued in that capacity through early 2006. AR 1411. Plaintiff described his role as a
2  reviewer of medical tests and records that had been conducted and prepared by others. AR
3  1412, 1414. His responsibility was to review test results conducted by the clinic on patients
4  referred for testing primarily by Dr. Montenegro, and to indicate agreement (or
5  disagreement) with recommendations that had been prepared by clinic staff for diagnoses
6  and treatment. AR 1414-16. He reviewed such records, including the sample claims in this
7  record, and signed the medical documents indicating his review under the title of "Medical
8  Director." AR 1415-16, 244. Plaintiff testified that he never saw any of these patients and
9  never treated any of these patients. AR 1416. He further testified that he never billed or
10 caused to be billed to Medicare any claims related to the testing or treatment of the patients
11 of the clinic. AR 1417.

12      19.    After reviewing the documentary evidence and the testimony provided by the
13 Plaintiff at the hearing, in a decision dated August 12, 2009, the ALJ upheld the
14 overpayment assessment and determination of Plaintiff's liability for the overpayment. AR
15 56-67. The ALJ found:

> Other than the raw medical records in the case files, which are essentially unexplained, there is no evidence to support a finding that the services provided were reasonable and medically necessary. To make such a finding, it would be necessary to provide evidence that the services were required to treat significant signs and symptoms. Any diagnostic tests must be ordered by the physician who is treating the beneficiary for a specific medical problem and who uses the test results in the management of the beneficiary's medical problem. A full history and physical examination should be accompanied by diagnostic decision making, appropriate preliminary examinations or tests, and an order that is justified as required for further diagnosis and testing.

AR 64-65.

24      20.    The record before the ALJ contained no evidence of signs and symptoms that
25 supported the referral for testing or that the testing followed a full history with preliminary
26 examinations or tests. AR 65. Missing also was any indication that the test results in these
27 cases were utilized or intended to be utilized for the establishment of treatment parameters.
28 Id.

-8-

21. Plaintiff never attempted to defend or establish the reasonableness and necessity of the services at issue. Instead, Plaintiff argued that he had no involvement in the provision of these services or in the billing process (other than as a reviewer of the work of others for which he received a salary) and therefore should not be liable. AR 65. The ALJ noted that these contentions were contradicted by several facts, including that Plaintiff signed medical documents in the files of the sampled beneficiaries as "Medical Director" of Sleepless in L.A., the existence of a checking account in Plaintiff's name on which Plaintiff frequently wrote checks for his own salary and that, Plaintiff recalled signing numerous documents at the beginning of his association with Sleepless in L.A. but never asked for copies of the documents he signed. Id. Based on these facts and Plaintiff's testimony, the ALJ found it "far more likely that [Plaintiff] was aware of the circumstances presented by Sleepless in L.A., namely, that the clinic's principals would use his ID number for Medicare billings, set up a checking account for the deposit of proceeds of such payments, and that the account would be in [Plaintiff's] name." Id. The ALJ noted that the allegation that the Plaintiff was the victim of fraud was of limited relevance to the determination of whether there is a basis for the waiver of liability. Id.

The ALJ found that:

> based on applicable laws, regulations and CMS policy guidance, that the Plaintiff has failed to demonstrate that the services at issue in this appeal were reasonable and medically necessary, and properly billed to Medicare. The decision of the QIC is affirmed.

AR 66.

22. Plaintiff requested a de novo review by the Medicare Appeals Council on October 14, 2009. AR 36-52. Plaintiff argued that: 1) the agency failed to present any proof that Plaintiff received any proceeds or operated as a provider, or had any control or ownership interest in Sleepless in L.A.; and 2) the agency failed to present any evidence that Plaintiff ever treated the beneficiary patients. AR 36.

23. The Appeals Council issued its decision on July 20, 2010 affirming the ALJ's decision. AR 12-18. The Appeals Council rejected both of Plaintiff's issues for appeal,

concluding that "[t]hese contentions by the [Plaintiff] do not address the ALJ's findings on Medicare coverage for the services at issue. The Council therefore adopts the ALJ's findings on coverage without further discussion." AR 16.

24. The Appeals Council also adopted the ALJ's determination of liability. The Appeals Council found that the ALJ adequately explained why the Plaintiff's assertion that he had no involvement in the provision of the services at issue or the billing process is not credible based on his testimony and his signature as the Medical Director in the files of the thirty-eight beneficiaries at issue. AR 16-17. Lastly, the Appeals Council found that the Plaintiff failed to demonstrate that the services at issue were reasonable and medically necessary. AR 17. The Appeals Council found that the Plaintiff remained liable for the services at issue and recovery of the overpayment was not waived pursuant to section 1870(b) of the Act (42 U.S.C. § 1395pp). Id.

25. On November 17, 2010, Plaintiff filed the instant complaint, seeking judicial review of the Secretary's final decision.

## II. **Conclusions of Law**

### A. **Standard of Review**

1. Jurisdiction in this Court is pursuant to 42 U.S.C. § 1395ff(b)(1)(A), which incorporates 42 U.S.C. § 405(g) and allows for judicial review of a final decision of the Secretary with respect to benefits under Medicare Part B. Under the foregoing statutory framework, judicial review of the Secretary's final decision must be based solely on the record. The reviewing court may affirm, modify, or reverse the final decision of the Secretary. Id.

2. Under 42 U.S.C. § 405(g), the Secretary's final decision will be disturbed only if the factual findings underlying the decision are not supported by substantial evidence or if the decision fails to apply the correct legal standards. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). The findings of the Secretary as to any fact shall be conclusive and must be upheld if supported by substantial evidence. 42 U.S.C. § 405(g); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). "Substantial evidence" is "more than a mere scintilla but less

than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). Whether substantial evidence supports a finding is determined from the record as a whole, with the court weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Id. When the evidence can rationally be interpreted in more than one way, the court must uphold the Secretary's decision. Id.

3. Because an agency's action is presumed valid, the burden is upon the party challenging the agency's action to show that it is arbitrary and capricious and not upon the agency to show that the action is not arbitrary and capricious. Diplomat Lakewood, Inc. v. Harris, 613 F.2d 1009 (D.C. Cir. 1979); Short Haul Survival Comm. v. United States, 572 F.2d 240, 244 (9th Cir. 1978); Angel v. Butz, 487 F.2d 260, 263 (10th Cir. 1973). Deference is all the more warranted where, as here, the question of interpretation arises under a "complex and highly technical regulatory program," in which even "the identification and classification of relevant criteria necessarily require significant expertise, and entail the exercise of judgment grounded in policy concerns." Thomas Jefferson University v. Shalala, 512 U.S. 504, 512 (1994). Thus, as the Ninth Circuit stated in U.S. v. Elias, 269 F.3d 1003, 1010 (9th Cir. 2001), if an agency's interpretation "is reasonable, we must defer to the agency's interpretation, even if we would have reached a different result had we construed the statute initially."

B. **The Secretary's Decision is Supported by Substantial Evidence**

4. The Medicare Act has provided that with respect to all Medicare items or services:

> Notwithstanding any other provision of this title, no payment may be made under Part A or Part B for any expenses incurred for items or services . . . which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. . . .

42 U.S.C. § 1395y(a)(1)(A); 42 C.F.R. § 411.15(k)(1).

-11-

5. Congress has vested final authority in the Secretary to determine what items or services are "reasonable and necessary." 42 U.S.C. § 1395ff(a);[5/] Heckler v. Ringer, 466 U.S. 602 (1984).

6. Congress vested discretion in the Secretary to determine what information to require as a condition of payment. See Maximum Comfort, Inc. v. Sec'y of Health & Human Servs., 512 F.3d 1081, 1086-88 (9th Cir. 2007); see also Cmty. Hosp. v. Thompson, 323 F.3d 782, 788 (9th Cir. 2003).

7. The Secretary's regulatory scheme places the burden of establishing the medical necessity of diagnostic tests on the entity submitting the claim. 42 C.F.R. §§ 410.32(d)(2)(ii) and 410.32(d)(3).[6/] When audited, a Medicare provider seeking payment must provide sufficient evidence to establish the medical reasonableness and necessity of the services billed to Medicare. 42 U.S.C.§§ 1395g(a), 1395l(e), 1395gg; see also 42 C.F.R. § 411.15(k)(1). Under the applicable regulations cited above (see 42 C.F.R. § 424.5(a)(6)), it is the responsibility of a provider to furnish sufficient information to determine whether payment is due and the amount of the payment. See Maximum Comfort, 512 F.3d at 1086-88; accord MacKenzie Medical Supply, Inc. v. Leavitt, 506 F.3d 341 (4th Cir. 2007);

---

[5/] Congress has on numerous occasions amended 42 U.S.C. § 1395y(a)(1) without questioning the Secretary's interpretation of the statute. See, e.g., Medicare, Medicaid, and SCHIP Benefits Improvement and Protection Act, Pub. L. 106-554, § 1(a)(6) (2000); Omnibus Budget Reconciliation Act of 1987, Pub. L. No. 100-203, § 4085(i)(15) (1987). Congress' longstanding refusal to repudiate the Secretary's interpretation of a statutory provision is "persuasive evidence" that it is the construction intended by Congress. See Young v. Cmty. Nutrition Inst., 476 U.S. 974, 983 (1986); F.D.I.C. v. Philadelphia Gear Corp., 476 U.S. 426, 437 (1986); Isaacs v. Bowen, 865 F.2d 468 (2d Cir. 1989).

[6/] Upon request by CMS, the entity submitting the claim must provide information about the claims. 42 C.F.R. § 410.32(d)(3)(i). If this information does not demonstrate that the service is reasonable and necessary, CMS provides the physician with information sufficient to identify the claim being reviewed; requests from the physician those parts of the beneficiary's medical record that are relevant to the specific claim(s) being reviewed; and, if the physician does not supply the documentation requested, informs the entity submitting the claim(s) that the documentation has not been supplied and denies the claim. 42 C.F.R. § 410.32(d)(3)(ii).

Gulfcoast Med. Supply, Inc. v. Sec'y of Health & Human Servs., 468 F.3rd 1347 (11th Cir. 2006).

8. Substantial evidence exists in the administrative record to support the Secretary's conclusion that Plaintiff was a Medicare "provider" of the services at issue.

9. At no time in the administrative appeals process has Plaintiff contested Medicare's determination that the services he provided were reasonable and medically necessary. Medicare was billed for these services under Plaintiff's Medicare provider number during the service period of December 14, 2004 through November 13, 2005. Plaintiff provided no explanation for the medical necessity of these tests.

10. The record does not establish that the claimed services were reasonable and necessary. Plaintiff did not submit medical records or other evidence to the ALJ showing that the specific medical condition of any of the thirty-eight beneficiaries at issue required any of the sleep and pulmonary studies that were performed. Nor did Plaintiff provide any patient-specific evidence of the reason for the ordered tests and services. A.R. 64-65.

11. Because substantial evidence in the administrative record supports the Secretary's conclusion that Plaintiff did not meet his burden of establishing the medical reasonableness and necessity of the services through adequate documentation and supplemental explanation, the Secretary properly denied Plaintiff's claim for Medicare Part B reimbursement because such services were not reasonable and necessary" under 42 U.S.C. 1395y(a).

C. **The Secretary Correctly Determined that Plaintiff was not Entitled to a Limitation of Liability Waiver**

12. When Medicare has denied payment to a provider on behalf of a Medicare beneficiary, Medicare will limit the provider's liability if the provider "did not know, and could not reasonably have been expected to know, that payment would not be made for such services." 42 U.S.C. § 1395pp(a). The Medicare Act also provides that overpayments shall not be recovered from a provider if the provider was "without fault" with respect to the overpayment. 42 U.S.C. § 1395gg(b)(1).

-13-

13. Substantial evidence supports the Secretary's finding that Plaintiff is not entitled to a waiver of his obligation to repay the overpayment because he "did not know, and could not reasonably have been expected to know, that payment would not be made for such services." 42 U.S.C. § 1395pp(a). Plaintiff was required to be familiar with Medicare rules and regulations that hold providers responsible for providing sufficient evidence to establish the medical reasonableness and necessity of the services billed to Medicare. 42 U.S.C.§§ 1395g(a), 1395l(e), 1395gg; see also 42 C.F.R. § 411.15(k)(1); 42 C.F.R. § 424.5(a)(6). As a Medicare provider, Plaintiff was charged both with knowledge of those authorities and with the understanding that Medicare would not provide reimbursement for services that are not demonstrably medically necessary and otherwise properly documented. See, e.g., Maximum Comfort, 512 F.3d at 1088 (charging Medicare supplier with constructive notice of publications from the Medicare contractor setting forth documentation requirements for suppliers of durable medical equipment). Plaintiff also had available to him 42 U.S.C. §§ 1395n, 1395y(a)(1) and 42 C.F.R. § 411.15 each of which independently provided him with sufficient and ample notice of the requirement for appropriate documentation. Therefore, Plaintiff was not entitled to a waiver of liability under 42 U.S.C. § 1395pp(a).

14. Substantial evidence also supports the Secretary's finding that Plaintiff is not entitled to a waiver of his obligation to repay the overpayment because he was "without fault" with respect to the overpayment. 42 U.S.C. § 1395gg(b)(1). A provider is without fault if it exercised reasonable care in billing and accepting Medicare payment. Medicare Financial Management Manual (MFMM), (CMS Pub. 100-06), Ch. 3, § 90. See http://www.cms.gov/manuals/downloads/fin106c03.pdf. The MFMM further explains that the provider should have known about a policy or rule if the policy or rule is in the provider manual or in the regulations. Id. at § 90.1. Plaintiff did not submit sufficient documentation or provide oral testimony substantiating that the services were medically reasonable and necessary. AR 56, 16. Thus, Plaintiff was not without fault in creating the overpayment.

-14-

1 Because Plaintiff was not "without fault" in creating the overpayments, no waiver of
2 recoupment of the overpayments is warranted.

3     15.    The Secretary's final decision in this matter is not arbitrary, not capricious, is
4 without legal error, and is supported by substantial evidence. Therefore, the Secretary's
5 final decision is sustained by this Court.

## CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff has failed to establish that the Secretary's findings were arbitrary, capricious, or unsupported by substantial evidence. The Court therefore finds that the Secretary's recoupment determination is supported by substantial evidence and was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Accordingly, the Court will enter judgment in favor of the Secretary.

IT IS SO ORDERED.

DATED: November 8, 2011

                                                                  Percy Anderson
                                                UNITED STATES DISTRICT JUDGE